UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDON COLLINS,

        Plaintiff,

v.                                  Case No.: 6:21-cv-1756-WWB-DCI

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

        Defendant.
                                       /

**ORDER**

THIS CAUSE is before the Court on the parties' cross Motions for Summary Judgment (Doc. Nos. 16, 17), and the parties' respective Responses (Doc. Nos. 22, 23) and Replies (Doc. Nos. 24, 25).

**I.   BACKGROUND**

Brandon Collins filed the instant action against Life Insurance Company of North America ("**LINA**") under the Employee Retirement Security Act ("**ERISA**"), as amended, 29 U.S.C. § 1001, *et seq*., seeking review of LINA's denial of long-term disability ("**LTD**") benefits.

Collins was employed by Estes Express Lines ("**EEL**") in the heavy-duty occupation of Materials Handler, a dock worker. (Doc 14-1 at 9, 14, 32; Doc. 14-7 at 136). Collins's occupation required him to exert fifty to one-hundred pounds of force occasionally, twenty-five to fifty pounds of force frequently, or ten to twenty pounds of force constantly to move objects. (Doc. 14-7 at 136). Collins stopped working on March

10, 2019, due to a torn rotator cuff and two herniated discs caused by two motor vehicle accidents.  (Doc. 14-1 at 9; Doc. 14-6 at 202).

Collins was covered by EEL's short-term disability plan ("**STD**") and its LTD plan. (Doc. 14-1 at 87; Doc. 14-5 at 24; Doc. 14-8 at 106–108).  Defendant initially provided LTD coverage under Group Policy No. FLK-980233 (the "**Plan**"), finding Collins could not perform his occupation as Materials Handler.  (Doc. 14-9 at 149–150).  After an identified period of time passes, however, benefits are only payable under the Plan if the claimant is unable to work in "any occupation for which [he is], or may reasonably become, qualified based on education, training or experience[.]"  (Doc. 14-14 at 425).  Accordingly, on April 10, 2020, LINA advised Collins that LINA would review his claim to determine if he continued to qualify for benefits under the "any occupation" standard.  (Doc. 14-5 at 91–92).

### A.     The Plan Documents

The Plan provides that after disability benefits have been payable for twelve months, a claimant is disabled if he is "unable to perform the material duties of any occupation for which he . . . is, or may reasonably become, qualified based on education, training or experience; and . . . unable to earn 60% or more of his . . . Indexed Earnings." (Doc. 14-14 at 484).  The Plan requires:

> The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy.  The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy.  He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid.  The Disability Benefit is shown in the Schedule of Benefits.

(*Id.* at 495). The Amendatory Rider to the Policy provides that "[t]he Plan Administrator has appointed the Insurance Company as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." (*Id.* at 509).

The Plan further states that a certificate of insurance ("**COI**") is to be provided to the insureds and that the "certificate will list the benefits, conditions and limits of the Policy." (*Id.* at 504). In addition, the Supplemental Information document provides that the Supplemental Information and the Certificate provided to Collins make up the Summary Plan Description ("**SPD**") as required by ERISA. (*Id.* at 428). The SPD, which includes the COI, provides:

> The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

(*Id.* at 429).

    **B.**    **The Medical Records**

Plaintiff underwent an anterior cervical discectomy with arthroplasty on March 14, 2019, to address his neck issues. (Doc. 14-1 at 106). On March 26, 2019, Collins's treating orthopedic surgeon, Dr. Jason Highsmith, noted Collins's statement that his symptoms had improved post-procedure, but he had some postoperative pain. (Doc. 14-7 at 47). Collins was unable to increase his range of motion, but the tingling into the left upper extremity was improving. (*Id.*). On June 15, 2019, Collins had a procedure with Dr. Francis McCormick to address his left shoulder. (Doc. 14-2 at 11–13). On August 9,

2019, Collins expressed that he had diminished pain and was working on strengthening, range of motion, and returning to recreational activity. (Doc. 14-13 at 87–88).

On September 5, 2019, Collins was in a third motor vehicle accident that worsened his neck and shoulder pain. (Doc. 14-5 at 63).

On March 25, 2020, Collins saw Dr. Nicholas Newsum with complaints about a finger deformity; Dr. Newsum concluded that the deformity was very functional and discharged Collins from care. (Doc. 14-10 at 158–160). On March 31, 2020, Plaintiff had a procedure with postoperative diagnosis of lumbar disc disruption at L4-L5. (Doc. 14-5 at 117).

Based on the medical records provided by Collins, a reviewing physician conducted a medical director review of the disability file and determined that Collins had no restrictions for sitting, standing, walking and reaching at or above waist level, could occasionally reach below waist/desk level, lift/carry up to twenty pounds, push/pull up to fifty pounds, climb ladders, stoop, crouch, squat, crawl, or kneel, and could frequently lift/carry up to ten pounds, push/pull up to twenty pounds, and climb stairs. (Doc. 14-6 at 203). A Transferable Skills Analysis ("**TSA**") was conducted, and it was determined that Collins could perform the sedentary occupation of Repair-Order Clerk. (*Id.*). Consequently, on October 29, 2020, LINA informed Plaintiff that he no longer met the Policy's definition of disabled under the "any occupation" standard. (*Id.* at 201–204). Collins appealed and provided additional medical records of epidural injections he received in 2020, and an MRI of the lumbar spine. (Doc. 14-6 at 123, 144, 269; Doc. 14-13 at 21–22).

4

Thereafter, Dr. Alen Nourian, a specialist in orthopedic surgery, performed an External MD Appeals Review. (Doc. 14-7 at 22–32). Dr. Nourian concluded that Collins was "functionally limited to a moderate degree" because he continued to have low back pain. (*Id.* at 27). Dr. Nourian noted the recent lumbar disc disruption at L3-4 and L5-S1, and Collins's flare ups. (*Id.*). Dr. Nourian's February 12, 2021 report suggested the following restrictions and limitations:

> Sitting: unrestricted
> Standing: occasionally 15 minutes at a time, up to 1 hours total per day
> Walking: occasionally 15 minutes at a time, up to 1 hours total per day
> Lifting: occasionally up to 15 lbs.
> Carrying: occasionally up to 15 lbs.
> Pushing: occasionally up to 15 lbs.
> Pulling: occasionally up to 15 lbs.
> Climbing stairs: occasionally
> Balancing: never
> Stooping: occasionally
> Kneeling: occasionally
> Crouching: occasionally
> Crawling: never
> Reaching: occasionally overhead/below waist; unrestricted desk level
> Use lower extremities for foot controls: unrestricted BLE
> Fine manipulation: unrestricted [right upper extremity] and occasionally [left upper extremity]
> Simple and firm grasping: unrestricted [right upper extremity] and occasionally [left upper extremity]

(*Id.* at 27–28). Dr. Nourian noted that Collins's treating providers had not commented on Collins's work status or level of functional limitation in their records. (*Id.* at 27). Collins directs the Court's attention to Dr. Highsmith's October 22, 2020 letter that stated "Brandon Collins is currently under my care. Due to recent surgery he is unable to work until further notice." (Doc. 14-6 at 120).

On February 24, 2021, Dr. Nourian included an addendum in his report after he considered additional medical records that indicated Collins had thoracic disruption at T8-

5

T9 through T10-T11, which would contribute to pain with sitting. (Doc. 14-7 at 31). Accordingly, Dr. Nourian revised his opinion regarding sitting, finding that Collins could sit constantly, thirty-minutes at a time, up to six hours total per day with the ability to frequently change positions every half hour with a two-minute "stand and stretch" break. (*Id.*).

On March 2, 2021, a TSA was performed by Rehabilitation Specialist Stacey Nidositko. (Doc. 14-7 at 39). Ms. Nidositko reviewed Collins's job description, and September 2019 and June 2020 Disability Questionnaires, the Dictionary of Occupational Titles, the OASYS, and the Medical Review Addendum from Dr. Nourian. (*Id.*). Ms. Nidositko identified two sedentary occupations, information clerk and surveillance-system monitor, that Collins could perform. (*Id.*).

On March 8, 2021, LINA issued Collins notice of its adverse determination. (Doc. 14-7 at 135–138). Thereafter, Collins provided a ruling by an Administrative Law Judge ("**ALJ**"), entered on March 10, 2021, that Collins was eligible for Social Security Disability Insurance ("**SSDI**") benefits. (Doc. 14-8 at 126, 131, 134–137). The ALJ found that Collins's ongoing neck, low back, and shoulder complaints limited him to performing less than a full range of sedentary type work activities. (*Id.* at 136). Notably, the ALJ found that Collins "can . . . sit for up to six (6) hours in an 8-hour workday with normal breaks." (*Id.* at 134–135). The ALJ also found that "[t]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift, carry, push and/or pull ten (10) pounds occasionally." (*Id.* at 134). The ALJ made such conclusion despite finding that Collins's "chronic pain occasionally interferes with concentration, pace and task persistence." (*Id.* at 135). The vocational expert testified in

6

the SSDI proceedings that there were no jobs in the national economy that Collins could perform. (*Id.* at 137). Thus, the ALJ concluded Collins is disabled "[b]ased on the testimony of the vocational expert [and] . . . considering the claimant's age, education, work experience, and residual functional capacity[.]" (*Id.*). As a result, LINA notified Collins it would request Collins' file from the Social Security Administration ("**SSA**"). (Doc. 14-8 at 110, 112–114).

On June 3, 2021, Dr. Nourian drafted a second addendum that stated his review of the ALJ determination did not change his prior assessment of Collins's restrictions and limitations. (Doc. 14-13 at 157–158). LINA notified Collins of its adverse determination, outlining its analysis of the ALJ report. (*Id.* at 161–164). Thereafter, Dr. Nourian reviewed additional medical records, but maintained his prior opinion. (*Id.* at 176–77). Dr. Nourian noted that Dr. Renato Vesga's February 11, 2021 note summarized Collins's functionality and was consistent with Dr. Nourian's prior conclusions. (*Id.* at 177). On August 2, 2021, LINA mailed Collins a final letter upholding its decision. (*Id.* at 189–193). The letter provided:

> For appeal consideration, your complete medical file was sent to Dr. Nourian for review. Records show that you went out of work due to back pain and had a bilateral L4-L5 posterior decompression with a micro discectomy on March 31, 2020. Despite having surgery, it was noted that you continued to have back pain. On January 18, 2021 you were seen by your neurosurgeon Dr. Highsmith and it was noted that you had a flare up over the last few months radiating into your left flank, radiating up into the mid thoracic spine. Your pain level was rated as 8/10 and you were focally tender at the T9-T10 level throughout the midline. Your straight leg raise was positive bilaterally. An MRI of your thoracic spine was ordered given your rotational pain and discomfort at the thoracolumbar junction. You had documented thoracic disc disruption at T8-T9 through T10-T11 most notable at T10-T11, which would contribute to your pain with sitting. In regards to your lumbar spine, it was noted that you were a candidate for a lumbar decompression at L3-L4 and L5-S1.

(*Id.* at 190). Dr. Nourian assessed Collins as having the following restrictions:

7

- Sitting: constantly, 30 minutes at a time, up to 6 hours total per day with the ability to frequently change positions every 30 minutes with a 2-minute "stand and stretch" break.
- Standing and walking: occasionally, 15 minutes at a time, up to 1-hour total per day.
- Lifting, carrying, pushing and pulling: occasionally up to 15 lbs.
- Climbing stairs: occasionally
- Balancing: never
- Stooping: occasionally
- Kneeling: occasionally
- Crouching: occasionally
- Crawling: never
- Reaching: occasionally overhead/below waist; unrestricted desk level bilateral upper extremities
- Use lower extremities for foot controls: unrestricted bilateral lower extremities
- Fine manipulation: unrestricted right upper extremity and occasionally left upper extremity
- Simple and firm grasping: unrestricted right upper extremity and occasionally left upper extremity

(*Id.* at 190–91). The letter noted that LINA received a complete copy of Collins's SSA claim file, which was reviewed by Dr. Nourian but did not alter his assessment. (*Id.* at 191). This action followed.

## II.     LEGAL STANDARD

"Under [ERISA], a plan administrator's benefits decision is subject to plenary review in federal court unless the administrator is given discretion to determine eligibility or construe the terms of the plan." *Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1294 (11th Cir. 2022) (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004); *Gilley v. Monsanto Co.*, 490 F.3d 848, 856 (11th Cir. 2007)). Accordingly, "the typical summary judgment analysis does not apply to ERISA cases." *Ruple v. Hartford Life & Accident Ins. Co.*, 340 F. App'x 604, 610 (11th Cir. 2009) (per curiam). ERISA does not expressly provide a standard for reviewing actions challenging benefits decisions by plan administrators or fiduciaries. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109

(1989). Rather, courts have held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115; *see also Harris*, 42 F.4th at 1294 ("If the administrator has discretion, a court determines whether its benefits decision was arbitrary and capricious (i.e., whether it lacked a reasonable basis.")).

Courts in the Eleventh Circuit apply a six-step framework in analyzing ERISA benefits claims:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.[1]

---

[1] Collins has not met his burden to demonstrate that LINA's conflict of interest, created by its authority to approve and pay benefits, tainted its decision. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010) (citation omitted). Specifically, Collins has cited no evidence that the conflict of interest tainted LINA's decision, other than the conflict itself. *Nunnelly v. Life Ins. Co. of N. Am.*, No. 4:19-cv-01383, 2021 WL 2826430, at *20 (N.D. Ala. July 7, 2021) ("Nunnelly does not elaborate how LINA's conflict of interest

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (per curiam).

### III. DISCUSSION

#### A. Standard of Review

First, Collins argues that a de novo standard of review applies because the Policy itself does not grant discretionary authority. LINA counters, however, that the Policy does in fact expressly grant discretionary authority.

"To confer discretionary authority to a plan administrator effectively, a plan document must contain 'express language' that is 'unambiguous in its design to grant discretion regarding entitlements to the fiduciary or administrator.'" *Prolow v. Aetna Life Ins. Co.*, 584 F. Supp. 3d 1118, 1147 (S.D. Fla. 2022) (quoting *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994); *Moon v. Am. Home Assurance Co.*, 888 F.2d 86, 88–89 (11th Cir. 1989)); *see also* 29 U.S.C. § 1102(a)(1) (giving plan fiduciaries as named in written instrument authority to control and manage operation of plan). "To determine whether discretion is bestowed under an ERISA plan, the Court must review all of the plan documents." *Wilson v. Walgreen Income Prot. Plan for Pharmacists & Registered Nurses*, 942 F. Supp. 2d 1213, 1248 (M.D. Fla. 2013) (citing *Capone*, 592 F.3d at 1195–96; *Curran v. Kemper Nat'l Servs., Inc.*, No. 04-14097, 2005 WL 894840, at *5 (11th Cir. Mar. 16, 2005)). "A 'plan document' refers to the written document which sets forth the requirements of every employee benefit plan under 29 U.S.C. § 1102(b) i.e., the document which provides a procedure for establishing and carrying out a funding policy, describes the procedures for the operation and administration of the plan, provides a

---

tainted its eligibility decision, and thus he fails to establish the conflict rendered LINA's decision arbitrary and capricious."), *aff'd*, No. 21-12537, 2022 WL 1640790 (11th Cir. May 24, 2022).

10

procedure for amending the plan and for identifying the persons who have authority to amend the plan, and specifies the basis on which payments are made to and from the plan." *Prolow*, 584 F. Supp. 3d at 1144 (quotation omitted).

"SPDs are the statutorily established means of informing participants of the terms of the plan and its benefits." *Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 767 (11th Cir. 2021) (quotation omitted). "Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans." *Id.* (quotation omitted). Although the SPD does not constitute the entire Plan, "the SPD is a critical feature of the ERISA regulatory scheme because it simplif[ies] and explain[s] a voluminous and complex document to plan participants and beneficiaries." *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1341 (11th Cir. 2006) (quotation omitted).

Here, the Policy states that the COI, which is part of the SPD, will explain the insured's benefits. The SPD provides:

> The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

(Doc. 14-14 at 429).

Collins does not dispute that the foregoing language expressly provides LINA discretion to adjudicate claims and appeals. Instead, he argues that the SPD conflicts with language in the Plan. The SPD, however, is not the only Plan document that includes language granting LINA discretionary authority. The Amendatory Rider attached to the Plan provides that "[t]he Plan Administrator has appointed the Insurance Company as the

11

named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." (*Id.* at 509).

The Plan further provides that the claimant "must provide the Insurance Company, at his or her expense, satisfactory proof of Disability before benefits will be paid." (*Id.* at 495). Language that a claimant must produce proof of loss that is "satisfactory" to the insurer has been found by the Eleventh Circuit to suffice as a grant of discretionary authority. *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233–34 (11th Cir. 2006); *Curran*, 2005 WL 894840, at *3; *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001); *see also Nunnelly*, 2021 WL 2826430, at *17 (applying "arbitrary and capricious" standard where the policy stated the employee "must provide [LINA], at his or her expense, satisfactory proof of Disability before benefits will be paid"); *Mattox v. Life Ins. Co. of N. Am.*, 536 F. Supp. 2d 1307, 1322 (N.D. Ga. 2008) (finding "satisfactory proof" language similar to the language in this case to confer insurer discretionary authority).

Based on the foregoing, the Court finds that the Plan confers discretion on LINA to determine claims and appeals. Accordingly, "even assuming that [LINA's] decision was '<u>de novo</u> wrong,' . . . the dispositive question is whether [LINA's] decision was arbitrary and capricious." *Prelutsky v. Greater Ga. Life Ins. Co.*, 692 F. App'x 969, 973 (11th Cir. 2017) (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989)). Thus, the Court can begin its analysis at step three of the Eleventh Circuit's standard of review. *Id.*

### B. Evidence Supporting Disability

Collins argues that Dr. Nourian's conclusion that he can sit for thirty minutes at a time for up to six hours a day with certain accommodations is unreasonable given the evidence that Collins suffers from a serious lumbar spinal problem. He further argues that Dr. Nourian failed to take into consideration how Collins's pain would affect his cognitive ability to work. In sum, Collins argues that Dr. Nourian ignored Collins's treating physicians' findings which renders his decision both de novo wrong and arbitrary and capricious.

LINA counters that Dr. Nourian did account for Collins's discomfort in sitting by finding that Collins could sit for six hours per day as opposed to eight hours. Dr. Nourian also added that Collins should be provided the ability to frequently change positions every thirty minutes with a two minute "stand and stretch" break. LINA highlights that Dr. Nourian's findings are consistent with the findings of the ALJ who expressly found that Collins can sit for up to six hours in an eight-hour workday with normal breaks. Collins does not dispute LINA's assertions. The Court finds LINA's determination that Collins could sit for up to six hours in an eight-hour workday with stretch breaks is not arbitrary and capricious as both the ALJ and LINA reached the same conclusion based on the medical records Collins provided. *Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006) ("As long as a reasonable basis appears for the plan administrator's decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision.").

As for cognitive interference, the ALJ noted that "[d]ue to the symptoms of his combined impairments along with his chronic pain, [Collins] has *occasional* interferences

13

with concentration, pace and task persistence." (Doc. 14-8 at 136 (emphasis added)). However, there were also assessments between October 2019 and March 2020 indicating Collins was "[n]egative for confusion and decreased concentration." (Doc. 14-6 at 16–17, 19–20, 23–24). The Disability Determination Examination also indicated Collins was "[n]egative for confusion and decreased concentration," and concluded that "[n]o mental medically determinable impairments [were] established." (Doc. 14-9 at 24–25). Plaintiff indicated in his questionnaire for SSDI that he can pay attention "[a]s needed." (*Id.* at 182). In his Function Report, however, Collins indicated: "[p]ain effects focusing, concentrating and at times remembering. Side effects from medications causes sickness and whole body weakness and fatigue both muscle and whole body. These effects make functioning difficult." (Doc. 14-9 at 206, 210). Nevertheless, the ALJ found only occasional interferences with concentration, pace, and task persistence, and determined that Collins could perform sedentary work as defined in 20 CFR § 404.1567(a) with the appropriate standing, sitting, lifting, and pulling restrictions and breaks. Again, the Court finds that evidence of some cognitive interference does not render LINA's decision arbitrary and capricious. *See Eady*, 203 F. App'x at 328.

Next, LINA argues it was reasonable for Dr. Nourian to form his own opinion based on the medical records Collins provided because none of Collins's treating physicians indicated that he was unable to work. Collins responds that Dr. Nourian blatantly disregarded Dr. Highsmith's October 22, 2020 letter that stated Collins could not return to work until further notice due to recent surgery. Even if the Court were to consider the note as Dr. Highsmith's opinion of Collins's abilities, "[n]othing in the Act itself . . . suggests that plan administrators must accord special deference to the opinions of treating

14

physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). With that said, an insurance company may not arbitrarily discredit or ignore reliable evidence. *Helms v. Gen. Dynamics Corp.*, 222 F. App'x 821, 832 (11th Cir. 2007). The letter, however, does not indicate that Collins is disabled. Rather, the note is tantamount to an excuse from work following a recent medical procedure and does not warrant a finding that LINA wrongfully denied Collins's claim.

In sum, the Court finds that LINA did not arbitrarily deny Collins's claim when it determined that Collins could perform sedentary work. The record establishes that LINA's denial was based on reasonable grounds. Collins has no issue with the ALJ's findings, and the only discrepancy between the SSDI determination and LINA's determination is the availability of jobs that Collins can perform. Collins has presented no evidence to refute LINA's identification of jobs that Collins can perform based on the restrictions found to be appropriate by both Dr. Nourian and the ALJ.

## IV.  CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc.16) is **DENIED**.
2. Defendant's Motion for Summary Judgment (Doc. 17) is **GRANTED**.
3. The Clerk is directed to enter judgment for Defendant and close this case.

**DONE AND ORDERED** in Orlando, Florida on March 24, 2023.


_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

16